Receipt number AUSFCC-10631781

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MICHAEL C. GUERRIERO,

    Plaintiff,

    v.

THE UNITED STATES,

    Defendant.

Case No. **25-1300 C** _____

**COMPLAINT**

### COMPLAINT

1.    Plaintiff, Michael C. Guerriero, is an employee of Defendant United States in the U.S. Department of Justice, Bureau of Prisons, at Federal Medical Center ("FMC") Devens (hereinafter, "FMC Devens" or "Institution") in Ayer, Massachusetts. Plaintiff Guerriero brings this action against the defendant on behalf of himself and other employees similarly situated, including current and former employees of the defendant at FMC Devens, for back pay, and other relief, pursuant to 29 U.S.C. § 216(b), 29 U.S.C. § 1331, 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1491, 5 U.S.C. § 5596, and the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, to remedy the willful and unlawful violations of federal law complained of herein.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1331, 28 U.S.C. § 1491, and 29 U.S.C. § 216(b).

3.    Venue is proper pursuant to 28 U.S.C. § 1402.

### PARTIES

4.    Plaintiff Guerriero and all those similarly situated (collectively, "Plaintiffs") each are, or have been, an "employee" within the meaning of Title 5 of the U.S. Code, specifically 5

U.S.C. §§ 2105, 5102, and 5041, and within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

5.     Each of the Plaintiffs is a current or former correctional worker employed by the United States Department of Justice, Bureau of Prisons, at FMC Devens in Ayer, Massachusetts. They have given their written consent to be party-plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The consent to sue form for Plaintiff Guerriero is attached as **Exhibit A**. This written consent form and those to follow each set forth Plaintiffs' name and home address.

6.     Defendant United States is, and at all material times has been, an employer under Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 5102 and 5541. Defendant United States also is, and at all material times has been, a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x) and § 203(d). Defendant employs, or has employed, the plaintiffs and other similarly situated employees and has its principal place of business in Washington, D.C.

## FACTS

7.     At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

8.     At all times material herein, Plaintiffs have worked in excess of the hourly levels specified in the FLSA, 29 U.S.C. § 207, and, as a result, at all times material herein have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rate of pay for all the hours they work in excess or 8 hours in a work day and/or in excess of 40 hours in a workweek.

9.     FMC Devens is administrative security medical center prison that houses more than a thousand male inmates who have been convicted of federal crimes, including violent offenders, drug dealers, rapists, murderers, and gang members, and who are serving sentences of varying

lengths up to and including life sentences.

10.    The Institution is staffed 24 hours per day, 365 days per year by correctional officers, including Plaintiffs. The correctional officers' principal activity is maintaining the safety and security of the Institution, inmates, and staff. They are charged with performing this principal activity every moment that they are within the Institution from the moment they begin clearing the mandatory security screening prior to their scheduled shifts until they exit the secure confines of the Institution after their scheduled shifts end. Plaintiffs perform their principal activity by, among other things, searching for and eliminating contraband (including searching themselves at the staff-dedicated screening site), maintaining constant vigilance to monitor for contraband and to ensure that nothing out of the ordinary is occurring, and immediately addressing any issues including, correcting inmate behavior and interacting with inmates, no matter the location and time of day that it occurs, including before their paid shifts begin and after their paid shifts end.

11.    Plaintiffs are assigned to posts within the Institution. Most of the posts are staffed for 16 or 24 hours per day, although some are staffed for only 8 hours per day.

12.    When a post is staffed for 24 hours per day, defendant assigns a correctional officer to the post for a scheduled paid shift of 8 hours. For a 24-hour post, there are three 8-hour paid shifts daily, often referred to as Morning Watch, Day Watch and Evening Watch.

13.    On 24-hour posts, three consecutive 8-hour shifts are scheduled so that there is no paid overlap, such as the following schedule: Day Watch shift from 8:00 a.m. to 4:00 p.m.; Evening Watch from 4:00 p.m. to midnight; and Morning Watch from midnight to 8:00 a.m. Plaintiffs are required to be on their assigned posts, in uniform and with all assigned equipment and pertinent post information, by the scheduled start of their paid shift. Failure to meet this requirement subjects Plaintiffs to discipline. Plaintiffs must remain on their posts until they are

properly relieved. Failure to meet this requirement subjects Plaintiffs to discipline.

14.    When assigned to the 24-hour posts, Plaintiffs perform more than 8 hours and 10 minutes of work each day because they perform work both before their scheduled paid shift start time and/or after the end of their scheduled paid shifts.

15.    Defendant does not compensate Plaintiffs for the time that they spend performing daily, expected work outside of their regularly scheduled 8-hour shifts. At all times material herein, defendant has suffered or permitted plaintiffs to work at least 15-30 minutes each shift, and sometimes more, before and/or after their scheduled shift times without compensating plaintiffs for this work time.

16.    24-hour posts worked by Plaintiffs at FMC Devens include but are not limited to: Compound 1; Compound 2, Control 1; Housing Units (including, but not limited to, G-A, H-A, J-A, HSU Core, P-B, P-D, P-A, N-1 #1, N-2 #1, N-3 #1, N-4 #1, N-5 #1) ; Special Housing Unit 1; and Special Housing Unit 3.

17.    Defendant has deprived Plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time that defendant has suffered or permitted them to spend engaged in pre-shift activities, including but not limited to the work activities described in paragraphs 18-35 below, which must be performed on Institution premises.

18.    On a daily basis, Plaintiffs assigned to a post at the Institution begin their unpaid pre-shift work when they start the process of clearing the staff screening site in the front lobby. At this location, Plaintiffs perform their principal activity of maintaining safety and security by first checking themselves for contraband and clearing an upright metal detector, both tasks constituting work to ensure no contraband enters the Institution. Defendant requires the security screening to prevent weapons and other contraband from entering the Institution, and keeping

4

weapons and other contraband out of the Institution is part of Plaintiffs' principal activities, specifically, searching for contraband. The Defendant cannot eliminate the screenings altogether without impairing the Plaintiff's ability to complete their work because they could not guarantee a contraband-free environment.

19.    The compensable (but unpaid) workday continues when Plaintiffs collect and don their duty belts, and other required equipment after clearing the staff screening site, including required metal chains and chits, which are essential and required to securely hold keys and access mandatory equipment. Retrieving and donning the duty belt and metal chains and chits must be performed on defendant's premises after clearing the screening site because Plaintiffs cannot wear their duty belts, with metal chains and chits, as they walk through the upright metal detector without sounding the alarm. Collecting and donning equipment on the employer's premises is compensable work but unpaid at the Institution.

20.    Regardless of the post to which they are assigned to at the Institution, after Plaintiffs clear the staff screening site and collect and don their duty belt and other mandatory equipment, Plaintiffs continue to perform pre-shift work activities as part of the continuous workday for which they are not paid. In addition, for all posts, Plaintiffs perform their principal activity of maintaining safety and security on the way to their assigned posts inside the secure confines of the Institution because they, at all times, are in uniform and identifiable to the inmates and staff as correctional officers, and remain vigilant, alert, and ready to (and do) respond to emergencies. They perform these pre-shift tasks without pay on a daily basis.

21.    After donning their duty belts, and collecting and donning other required equipment, Plaintiffs will be visually identified by the appropriate Control Center officer who will allow them entrance into the Control Center sally port where they are required to flip their

accountability chit signifying that they are on duty and inside the secured confines of the Institution. After clearing the sally port, Plaintiffs are locked inside the Institution with the inmates with no control over the sally port and slider doors.

22.    Plaintiffs continue to perform unpaid security work after clearing the sally port and while walking to their posts inside the secure confines of the Institution. While walking to their posts, Plaintiffs continue to perform their principal activity by supervising and monitoring inmates, observing and correcting inmate behavior, responding to inmate questions, checking for security breaches in the Institution, searching for contraband, running to locations where body alarms sound, and responding to other emergencies as they arise. At all times Plaintiffs are within the secure confines of the Institution, they are subject to the rules and regulations of the Institution and the U.S. Bureau of Prisons and are in uniform and identifiable to all individuals as correctional officers.

23.    For all posts at issue, Plaintiffs perform their principal activities of maintaining safety and security of the Institution, inmates and staff while walking to their assigned posts inside the secure confines of the Institution because, among other things, they, at all times, are in uniform, identifiable to the inmates and staff as correctional officers, and they perform patrol and security work as they walk to their posts, remain vigilant, alert, and ready to (and do) respond to emergencies.

24.    Once Plaintiffs arrive at their posts inside the Institution, they continue to perform unpaid work as they inspect, account for, and exchange equipment—including but not limited to radios, oleoresin capsicum ("OC") spray, keys, handcuffs, and batons —with the outgoing correctional officer assigned to that post. Plaintiffs also perform a vital (but unpaid) information exchange with the outgoing correctional officer about any significant security events that occurred

the previous shift so that the oncoming correctional officer has all the important information they need to maintain security of the inmates, staff, and post during their shift.

25.     In performing this information and equipment exchange, the oncoming correctional officer and the outgoing correctional officer, whose paid scheduled shifts do not overlap, can be outnumbered by inmates by ratios of 125 (or higher) to 1. While performing the information and equipment exchange, Plaintiffs are physically at their assigned posts locked inside the Institution and/or locked inside a housing unit/special housing unit/the compound, etc., with dangerous inmates. As they exchange equipment and vital, potentially, life-saving information, Plaintiffs are performing their principal activities of maintaining safety and security of the Institution by supervising and monitoring inmates ***on post.*** While doing so, they also continue to perform their principal activity of maintaining safety and security of the Institution by ensuring accountability for keys and correctional equipment so that such items do not fall into the hands of inmates, as well as by ensuring that oncoming officers have all information necessary to maintain the safety and security of the inmates, staff and post during their shift.

26.     This on-post information and equipment exchange is neither a preparatory nor concluding activity.  Accordingly, it cannot be *de minimis* as a matter of law. It is part of Plaintiffs' workday and should be part of the scheduled compensable shift, but it is not.  Instead, the Government expects Plaintiffs to perform this work on-post for free, shift after shift.

27.     At minimum, performing this vital information and equipment exchange on the assigned post is integral and indispensable to Plaintiffs' principal activity of maintaining safety and security of staff, inmates, and the Institution because the exchange is intrinsic to that principal activity, and one with which they cannot dispense if they are to safely perform their jobs as correctional officers in the dangerous prison environment.

28.    While two officers engage in this information and equipment exchange with each other on each post (i.e., the oncoming and outgoing officer), only one officer is paid for this work time because there is no scheduled paid overlap to the shifts even though there is, in fact, an overlap to the shifts.

29.    Defendant is aware and has long been aware that there is a *de facto* overlap of Plaintiffs' shifts, resulting in regularly recurring periods of unpaid overtime work on a daily basis.

30.    Defendant has also deprived plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time that defendant has suffered or permitted them to engage in post-shift activities, all of which must be performed on Institution premises. These activities include, but are not limited to, exchanging information and equipment on the assigned post with oncoming staff, remaining vigilant, alert, and ready to respond to emergencies while within the secured confines of the Institution, supervising and monitoring inmates, observing and correcting inmate behavior, looking for contraband, responding to body alarms and other emergencies. These activities are all part of the continuous workday and are compensable, but they are unpaid at the Institution.

31.    Plaintiffs are required to, and do, respond to emergencies, including violent fights between inmates, within the Institution on unpaid time when such emergencies occur while they are walking to their posts prior to their shifts or while they are walking from their posts back to the Control Center after their shifts. Failure to respond to an emergency can result in discipline up to and including termination and has resulted in serious discipline at FMC Devens.

32.    At minimum, these on-post equipment and information exchanges and the patrol and security activities performed by Plaintiffs as they walk to and from their posts outside their scheduled shift hours are activities that are integral and indispensable to plaintiffs' principal

activity of maintaining safety and security of staff, inmates, and the Institution because they are intrinsic to that principal activity, and ones with which they cannot dispense if they are to safely perform their job duties as correctional officers in the dangerous prison environment.

33.    After clearing the screening site and donning equipment that has been screened at that site, Plaintiffs spend at least 15-30 minutes above and beyond their scheduled 8-hour shifts each shift locked inside the Institution: (1) walking to their posts prior to their paid shifts while performing the duties described in paragraphs 22-23 and 30-31, *supra;* (2) engaging in the on-post, unpaid information and equipment exchange described in paragraphs 24-28; and (3) walking from their posts to exit the secured perimeter after their paid shifts while performing the duties described in paragraph 30-31.

34.    While the 24-hour correctional officer posts are primarily staffed with correctional officers, due to staff shortages, non-custody correctional workers are often "augmented" to cover correctional officer posts. Non-custody positions include but are not limited to workers assigned to food services, unit counselors, and correctional services staff.

35.    When non-custody workers are augmented and assigned to a correctional officer post, the non-custody workers perform the same unpaid work duties as a correctional officer and arrives and departs at the same time that a correctional officer working the same shift on the same post would. Thus, plaintiffs who are non-custody workers have been suffered or permitted to perform the same unpaid work daily, as described above, to maintain the safety and security of the Institution when assigned to the posts at issue in this case. However, similar to the custody worker plaintiffs, defendant only compensates non-custody worker plaintiffs for their scheduled hours of work and does not compensate them for their pre-shift or post-shift work when they work on an at-issue correctional officer post.

## COUNT I

### FAILURE TO PROPERLY COMPENSATE EMPLOYEES FOR
### THE ENTIRE CONTINUOUS WORKDAY

36.     Plaintiff hereby incorporates by reference Paragraphs 1 through 35 in their entirety.

37.     Section 7(a) of the FLSA (29 U.S.C. § 207(a)) provides that an employer, including the United States, shall compensate its employees at a rate not less than one and one-half times their regular rate for each hour employed in excess of 40 hours per week. In addition, section 551.501 of Part 5 of the Code of Federal Regulations, 5 C.F.R. § 551.501, provides that federal agency employers such as the Bureau of Prisons, shall compensate their employees at a rate of not less than one and one-half times the employees' regular rate of pay for all hours of work in excess of 8 in a day and/or 40 in a workweek. At all or some of the times material herein, Plaintiff and other employees similarly situated have been entitled to FLSA overtime pay for all hours of work in excess of eight (8) in a day and/or forty (40) in a workweek.

38.     For federal employees such as Plaintiffs, time spent in a paid, nonwork status, such as holiday, paid leave, compensatory time off, and excused absences, is considered "hours of work" for purposes of calculating overtime entitlement.  5 C.F.R. § 551.401(c).

39.     At all or some of the times material herein, and since August 6, 2022, the plaintiffs have worked for defendant at FMC Devens and have been assigned to work the 24-hour custody posts set forth above in Paragraph 16. At all times material herein, each of the plaintiffs has worked hours in excess of forty (40) hours per week and/or eight (8) hours a day when assigned to these posts. In addition, at all times material herein, each of the Plaintiffs has performed uncompensated pre-shift and/or post-shift work.

40.     At all times material herein, Plaintiffs have been entitled to be compensated with overtime pay for time spent performing work prior to their paid shift start times. The defendant,

however, has failed to count as work the pre-shift tasks that Plaintiffs regularly perform outside of their paid shift times, including the time that plaintiffs spend clearing the required staff screening site, collecting and donning required equipment, security work performed while walking to their assigned post, and completing an on-post shift exchange with an outgoing correctional officer.

41.    At all times material herein, Plaintiffs have been entitled to be compensated with overtime pay for time spent performing work after the end of their scheduled paid shift. The defendant, however, has failed to count as work the post-shift tasks that plaintiffs have performed outside of their paid shift times including the time that plaintiffs spend completing an on-post shift exchange with the oncoming correctional officer and security work performed while crossing the Institution's compound toward the Institution's exit.

42.    Because the defendant has failed to count as compensable work time these required pre-shift and post-shift tasks, the plaintiffs have not been compensated for all hours of work as required by the FLSA.

43.    By failing and refusing to pay plaintiffs and other employees similarly situated the overtime pay required under law, defendant has violated, and is continuing to violate in a willful and intentional manner, the provisions of the FLSA. As a consequence, at all times material herein, plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

44.    As a result of defendant's willful and purposeful violations of the FLSA and Title 5, there have become due and owing to each of the Plaintiffs various amounts that have not yet been precisely determined. The employment and work records for each of the Plaintiffs are in the exclusive possession, custody and control of defendant and its public agencies, and Plaintiffs are

unable to state at this time the exact amounts owing to each of them. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, 29 U.S.C. § 211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

45.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover backpay and liquidated damages in an amount equal to their backpay for the defendant's failure to pay overtime compensation in compliance with the FLSA.

46.    Pursuant to the Back Pay Act, 5 U.S.C. § 5596, Plaintiffs are entitled to recover interest on their backpay damages for the defendant's failure to pay them overtime compensation.

47.    Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b), the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all others similarly situated, pray that this Court:

(a) Find that defendant has willfully and wrongfully violated its statutory obligations, and deprived Plaintiffs of their rights under the FLSA and Title 5;

(b) Award Plaintiffs monetary damages, including backpay and liquidated damages equal to their unpaid compensation, plus interest;

(c) Award Plaintiffs their reasonable attorneys' fees to be paid by defendant, and the costs and disbursements of this action; and

(d) Grant such other relief as may be just and proper.

Dated: August 6, 2025                    Respectfully submitted,

                                         /s/ T. Reid Coploff
                                         T. Reid Coploff
                                         McGILLIVARY STEELE ELKIN LLP
                                         1101 Vermont Avenue, N.W.
                                         Suite 1000
                                         Washington, D.C.  20005
                                         Phone: (202) 833-8855
                                         trc@mselaborlaw.com

                                         *Counsel of Record for Plaintiffs*